**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

**THEODORIC B. LAWTON,**

**Petitioner,**

**v.**

**KELLI DAVIS, Warden,**

**Respondent.**[1]

**Case No. 23-CV-272-JFH-JAR**

# OPINION AND ORDER

Petitioner Theodoric B. Lawton ("Lawton"), an Oklahoma prisoner represented by counsel, seeks federal habeas relief under 28 U.S.C. § 2254. Dkt. No. 2. He asserts he is in state custody in violation of federal law pursuant to the criminal judgment entered against him in Carter County District Court Case No. CF-2010-113. *Id.* Lawton raises three (3) grounds for habeas relief. *See id.* Having considered Lawton's Petition for Writ of Habeas Corpus ("Petition") [Dkt. No. 2], Respondent's Pre-Answer Motion to Dismiss Petition Writ of Habeas Corpus as Time-Barred ("Motion") [Dkt. No. 8], Respondent's Brief in Support of Pre-Answer Motion to Dismiss Petition for Writ of Habeas Corpus as Time-Barred [Dkt. No. 9], the record of state-court proceedings provided by Respondent [Dkt. Nos. 9-1 through 9-24], Lawton's Response [Dkt. No. 12], and applicable law, the Court grants Respondent's Motion and dismisses the Petition because the Petition is barred by the applicable statute of limitations.

[1] Lawton is presently incarcerated at James Crabtree Correctional Center in Helena, Oklahoma, and Kelli Davis is the Warden of that facility. The Court therefore substitutes Kelli Davis, Warden, in place of Carrie Bridges as party Respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note on the record this substitution.

## BACKGROUND

On April 25, 2011, a Carter County jury found Lawton guilty of shooting with intent to kill. Dkt. No. 9-1. The trial court sentenced Lawton to a forty-year term of imprisonment. *Id.* Lawton filed a direct appeal, and, on June 13, 2012, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his conviction. Dkt. No. 9-3.

On October 18, 2012, Lawton filed a petition for writ of habeas corpus in this Court. Dkt. No. 9-4. Lawton's first petition for writ of habeas corpus was dismissed on September 17, 2013, as unexhausted. Dkt. No. 9-5.

On September 11, 2013, Lawton filed his first application for post-conviction relief. Dkt. No. 9-6. The state district court denied the first application for post-conviction relief, and the district court's denial was affirmed by the OCCA on July 9, 2014. *See* Dkt. No. 9-9. Lawton filed a second application for post-conviction relief on October 7, 2019. Dkt. Nos. 9-10 and 9-11. The state district court denied the second application for post-conviction relief, and the OCCA affirmed the denial on May 14, 2020. Dkt. No. 9-17.

Subsequently, Latwon filed his second petition for writ of habeas corpus in this Court, on March 21, 2022. Dkt. No. 9-18. Lawton's second petition for writ of habeas corpus was dismissed on June 7, 2023, as unexhausted. Dkt. No. 9-19. On August 17, 2023, Lawton filed the instant, third petition for writ of habeas corpus. Dkt. No. 2. Lawton raises three (3) grounds for relief: (1) he is actually innocent because his conviction was the result of prosecutorial misconduct; (2) his appellate counsel was ineffective for failing to investigate; and (3) his appellate counsel was ineffective for failing to raise the willful suppression of exculpatory evidence. *Id.* at 2, 11, 22, 25. Respondent contends that: (1) Lawton's Petition is untimely pursuant to 28 U.S.C. § 2244(d)(1); (2) his claims are not entitled to equitable tolling; and (3) Lawton cannot avail himself of the actual

innocence exception to avoid the Antiterrorism and Effective Death Penalty Act's ("AEDPA") time bar. *See* Dkt. No. 9.

**DISCUSSION**

Under the AEDPA, state prisoners have one (1) year from the latest of four (4) triggering events in which to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). These events include:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; [and]
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The one-year limitations period generally runs from the date the judgment became "final" under § 2244(d)(1)(A), unless a petitioner alleges facts that implicate § 2244(d)(1)(B), (C), or (D). *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).

**I. 28 U.S.C. § 2244(d)(1)(A)**

As outlined above, Lawton's conviction was affirmed by the OCCA on June 13, 2012. Dkt. No. 9-3. Lawton did not seek a writ of certiorari from the United States Supreme Court within ninety (90) days after the OCCA affirmed the conviction. Dkt. No. 9 at 7.[2] Therefore, Lawton's conviction became final on September 11, 2012. *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) ("[P]etitioner's conviction is not final and the one-year limitation period for filing a federal

[2] The Court's citations refer to CM/ECF header pagination.

habeas petition does not begin to run until—following a decision by the state court of last resort—after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed." (internal citation and quotation omitted)). Latwon's one-year period to file a petition for writ of habeas corpus began on September 12, 2012, and, absent statutory tolling, expired September 12, 2013. Therefore, absent any tolling events, the August 17, 2023 Petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

**II. 28 U.S.C. § 2244(d)(1)(D)**

Throughout the instant Petition, Lawton relies on the April 17, 2017 Affidavit of Prince "Pikey" Nash Jr." (the "Nash Affidavit") to support the requested habeas relief. *See* Dkt. No. 2, *generally*. However, as noted by Respondent, Lawton does not explicitly address the timeliness of his Petition. *See* Dkt. No. 2. And Lawton's "filings are not entitled to 'the mandated liberal construction afforded to pro se pleadings.'" *Rawle v. Wyo. Dep't of Corr. State Penitentiary Warden*, 390 F. App'x 769, 773 n.4 (10th Cir. 2010)[3] (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). Nevertheless, construing Lawton's Petition "so as to do justice," to the extent Lawton intends to rely on the Nash Affidavit and § 2244(d)(1)(D), Lawton's Petition is still untimely. Fed. R. Civ. P. 8(e).

"By its plain language, § 2244(d)(1)(D) is directed to when the factual predicate of a petitioner's claim or claims could have been discovered through the exercise of due diligence." *Resinger v. Farris*, 804 F. App'x 1001, 1002 n.2 (10th Cir. 2020). "A factual predicate constitutes the vital facts underlying those claims." *Purkey v. Kansas*, 281 F. App'x 824, 827 (10th Cir. 2008)

[3] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

(quotation omitted). Furthermore, trigger dates under § 2244(d)(1)(D) require a "claim-by-claim consideration." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005).[4]

Lawton relies on the Nash Affidavit in support of Grounds I and II, prosecutorial misconduct and ineffective assistance of appellate counsel claim. Assuming without deciding the Nash Affidavit contains the vital facts underlying Grounds I and II, the Nash Affidavit does not render these Grounds timely. The Nash Affidavit was executed on April 17, 2017. Therefore, giving Lawton the benefit of the Nash Affidavit, his statute of limitations started the next day, April 18, 2017, and expired on April 18, 2018. *See Harris v. Dinwiddie*, 642 F.3d 902, 907 n.6 (10th Cir. 2011); *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003). The second application for post-conviction relief, filed October 7, 2019 [Dkt. No. 9-10], did not provide any statutory tolling as it was filed after the expiration of the limitations period under § 2244(d)(1)(D). *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006). Therefore, even giving Lawton the benefit of the Nash Affidavit, Grounds I and II are untimely.

Lawton's Ground III does not rely upon the Nash Affidavit. *See* Dkt. No. 2 at 25-26. Rather, Ground III relies on information that was available at, or close in time to, trial. *See id.* Therefore, the Nash Affidavit does not provide the vital facts underlying Ground III or an alternate commencement date of the AEDPA statute of limitations for this claim.

Therefore, as explained, Lawton's claims remain time barred even after considering 28 U.S.C. § 2244(d)(1)(D).

---

[4] A freestanding claim of actual innocence based on newly discovered evidence is not a cognizable basis for federal habeas relief. *Boyd v. Martin,* 747 F. App'x 712, 715 (10th Cir. 2018). Therefore, to the extent Lawton is asserting a free-standing actual innocence claim under Ground I [Dkt. No. 2 at 11-22], the Court will not consider whether such a claim is timely in light of the Nash Affidavit and § 2244(d)(1)(D).

**III. 28 U.S.C. § 2244(d)(2)**

Under 28 U.S.C. § 2244(d)(2), the limitations period is statutorily tolled during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). This statutory tolling provision does not apply to state petitions for post-conviction relief filed beyond the one-year limitations period prescribed by the AEDPA. *Clark*, 468 F.3d at 714.

Lawton filed his first application for post-conviction relief on September 11, 2013, one (1) day before the expiration of his AEDPA statute of limitations. Dkt. No. 9-6. The denial of the first application was ultimately affirmed by the OCCA on July 9, 2014. Therefore, Lawton received the benefit of statutory tolling from September 11, 2013, until July 9, 2014. He then had one day, or until July 10, 2014, to file his petition for writ of habeas corpus. Therefore, the instant, August 17, 2023, petition for writ of habeas corpus is untimely even with the benefit of statutory tolling.

Lawton's first petition for writ of habeas corpus, filed October 18, 2012, does not provide Lawton with any statutory tolling. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)" and therefore the statutory year was not tolled "during the pendency of respondent's first federal habeas petition"). Nor does his second application for post-conviction relief as it was filed beyond the one-year limitations period. *Clark*, 468 F.3d at 714. Therefore, even with the benefit of statutory tolling, Lawton's August 17, 2023 Petition is untimely.

## IV. Equitable Tolling

To the extent Lawton seeks equitable tolling, he has not shown any basis for the Court to equitably extend the limitations period. While the one-year statute of limitations may be subject to equitable tolling, equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Moreover, Lawton's "burden in making this demonstration is a heavy one: [federal courts] will apply equitable tolling only if he is able to show specific facts to support his claim or extraordinary circumstances and due diligence." *Vigil v. Jones*, 302 F. App'x 801, 804 (10th Cir. 2008) (internal quotations omitted) (quoting *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008)). Lawton's Petition does not indicate any extraordinary circumstances precluded the timely submission of his action. Accordingly, equitable tolling is unavailable to Lawton.

## V. Actual Innocence Exception

As mentioned above, Lawton fails to address the timeliness of his Petition. However, he does dedicate considerable time to addressing the actual innocence exception. *See* Dkt. No. 2 at 11-22. Even though Lawton is not entitled to liberal construction, the Court endeavors to construe Lawton's pleadings "so as to do justice" and will address the actual innocence exception. Fed. R. Civ. P. 8(e). The Court understands Lawton's position to be that the Nash Affidavit demonstrates his actual innocence thereby providing him with a gateway to have his time-barred claims considered on the merits by this Court.[5]

[5] Within his Response, Lawton argues Shirley Brown's affidavit and other pieces of evidence support his claim for actual innocence. *See* Dkt. No. 12. However, within his Petition, the only evidence Lawton cites to in support of his actual innocence argument is the Nash Affidavit. *See* Dkt. No. 2 at 11-22. Lawton's arguments regarding the Shirley Brown affidavit and gun shot residue were only presented in support of his ineffective assistance of appellate counsel claims.

First, Lawton failed to rebut the presumption of correctness of the state courts' factual findings. 28 U.S.C. § 2254(e)(1); *see Fontenot v. Crow*, 4 F.4th 982, 1034 (10th Cir. 2021) (explaining that § 2254(e)(1) applies to state-court "factual determination[s] bearing on the resolution of [a gateway innocence assertion]" (internal quotations omitted)). Lawton presented the Nash Affidavit to the state district court in his second application for post-conviction relief. *See* Dkt. No. 9-11 at 23-24. The state district court considered the Nash Affidavit and explained:

> The Defendant's claim that Prince Nash, Jr.'s handwritten statement in 2017 is new evidence is clearly without merit. Prince Nash, Jr.'s handwritten statement in 2017 clearly contradicts his statement given to police prior to the original tr[ia]l. Prince Nash, Jr., passed away several months after he wrote the statement in 2017. His handwritten statement is certainly hearsay and not admissible in any hearing or trial. In fact, the Defendant's assertions of new evidence are only a re-characterization of the Defendant's arguments previously made at trial, in motions for a new trial, on his appeal, and made in his previous application for post-conviction relief. The Court finds that there is not new evidence in this matter.

Dkt. No. 9-13 at 1. The state district court rejected Lawton's actual innocence claim. *Id.* The OCCA affirmed the state district court's order denying Lawton's second application for post-conviction relief. Dkt. No. 9-17. Lawton contends the state district court's finding is "an objectively unreasonable determination of the facts in light of the evidence submitted[.]" Dkt. No. 2 at 14. Lawton further argues the Nash Affidavit is corroborated by the evidence presented at

---

*See id.* at 22-27. This Court will not construct arguments on behalf of Lawton, a represented party. Furthermore, Lawton may not amend his Petition by adding factual allegations or legal theories in response to a motion to dismiss. *Cf. Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established, however, that in determining whether to grant a motion to dismiss, the district court … [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."); *see also Alberty v. Rankins,* No. 23-CV-312-GKF, 2024 WL 3433656, at *2 (N.D. Okla. July 15, 2024) (unpublished) (declining to address additional habeas claims first raised in response to motion to dismiss); *Jones v. Ciolli,* No. 22-CV-3262, 2023 WL 11888941 at *1 (D. Colo. May 3, 2023) (unpublished) (applying *Jojola's* principle to writ of habeas corpus). Therefore, the Court only considers the Nash Affidavit in support of Lawton's actual innocence gateway claim.

trial. *See id.* at 17-20. However, Lawton fails to counter the state district court's conclusion that the evidence is not "new." In all, Lawton has failed to carry his burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Second, looking past Lawton's failure to rebut the presumption of correctness, Lawton has not satisfied the requirements of the actual innocence gateway. Successful actual-innocence claims are rare due to the demanding evidentiary requirements for such claims. *McQuiggin v. Perkins*, 569 U.S. 383, 386 and 401 (2013); *House v. Bell*, 547 U.S. 518, 538 (2006). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); accord *McQuiggin*, 569 U.S. at 399 (applying the same standard to petitions asserting actual innocence as a gateway to raise habeas claims that are time-barred under § 2244(d)(1)). "To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, *trustworthy* eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Fontenot*, 4 F.4th at 1031 (emphasis added) (quoting *Schulp*, 513 U.S. at 324). "If the evidence is new and reliable, then the habeas court should evaluate the petitioner's claim by considering all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Blacklock v. Schnurr,* No. 24-3125, 2024 WL 4880569, at *5 (10th Cir. Nov. 25, 2024) (unpublished) (internal citations and quotations omitted).

Lawton has not presented new *reliable* evidence. Lawton's "new evidence" is the Nash Affidavit contradicting Nash's original statement to police and Nash's pre-trial statement to district attorney, Craig Ladd. In his original statement to police the night of the shooting, Nash stated "he

did not get a good look at the black male [shooter] and could not provide any further information." Dkt. No. 9-12 at 8. When Ladd met with Nash prior to the trial, Nash communicated "he would be unable to identify the person who shot Baeyan Brown." *Id.* at 10. Nash stated, "he had been very intoxicated on the night/early morning in question and really had no memory of what happened. I showed him his written statement and reminded him of what he had told Detective Culley, but he still claimed to have no memory about what happened due to his intoxication." *Id.*[6] Now, in the Nash Affidavit, Nash states the shooter was not Lawton. Dkt. No. 9-11 at 23-24. Further, Nash contends he told the prosecutor "it was not Theo Lawton and that I did not know who it was." *Id.* at 24. Further, Nash informed the prosecutor, "[Brown] said he did not know either. Then [the prosecutor] told me I was not needed in court, which is why I did not testify to tell my side of the story as the witness to the shooting." *Id.*

The Nash Affidavit is essentially a recantation of Nash's prior statements. Such evidence "is not sufficiently 'reliable' to establish actual innocence." *Ater v. Pettigrew*, 20-CV-1090-G, 2021 WL 5228521, at *8 (W.D. Okla. May 21, 2021) (unpublished), *report and recommendation adopted* 2021 WL 5234557 (W.D. Okla. Nov. 9, 2021). "Recanting testimony has long been disfavored as the basis for a claim of innocence. Appellate courts, even on direct review, look upon recantations with extreme suspicion." *Case v. Hatch*, 731 F.3d 1015, 1041-42 (10th Cir. 2013) (internal quotations and citations omitted); *see also United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir. 1984) ("[R]ecanted testimony is properly viewed with suspicion."). Therefore, the Nash Affidavit, standing alone, is suspect because close in time to the crime Nash claimed to not have seen the shooter well enough to be able to identify him. Dkt. No. 9-12 at 8-10. However,

---

[6] Nash did not testify at trial. The trial court asked "[n]o Prince, Jr.?" to which the prosecution responded, "[p]eople are kind of scared to testify against [Lawton]." Dkt. No. 9-22 at 142.

years later, Nash claims to have been able to see the shooter well enough, in the dark, to confirm the shooter in fact was not Lawton. Dkt. No. 2 at 15-16.[7]

Furthermore, the timing of the Affidavit undermines its reliability. *Schlup*, 513 U.S. at 332 (The Court "may consider how the timing of the submission … bear[s] on the probable reliability of that evidence."). The Nash Affidavit was executed over seven (7) years after the crime. *See* Dkt. No. 9-11 at 24. In all, the Court determines the Nash Affidavit is not credible. *Schlup,* 513 at 330 (newly presented evidence may require the Court "to make some credibility assessments"). Therefore, the Nash Affidavit does not satisfy the "new reliable evidence" standard. *Fontenot*, 4 F.4th at 1031. For this reason alone, Lawton cannot pass through the actual innocence gateway.

And even if the Nash Affidavit were considered reliable, when it is considered against the other evidence presented at trial, it is insufficient to establish "more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538. The evidence presented at trial was that Baeyan Brown, the victim, and Nash, Brown's passenger, were driving around Ardmore, Oklahoma around 2:00 a.m. on February 21, 2010. Dkt. No. 9-22 at 76. During their cruise, Brown saw his friend, Jerome Shannon, and his cousin, Roy Roberts, near the Paradox club, at the intersection of D Street and East Main. *Id.* at 77. Brown stopped to speak with Shannon and Roberts. *Id.* Shannon and Roberts were standing at the driver's side of Brown's vehicle when a man wearing a black "hoodie" sweatshirt and gloves bumped into Roberts. *Id.* at 77-79. Brown testified:

> Well, when he bumped into him, he kind of, like, rubbed up against him. And said, "What you doing over talking to a snitch a** n***** for?" And that's when I responded talking about "Who are you calling a snitch a** n*****?" By then, he turned around. He didn't take it completely off but kind of raised it back and said, "Do you remember me?" I said, "Oh, yeah. I do remember you." He said, "It's

[7] Brown testified Nash was his passenger, the passenger seat window remained closed and his "window's so dark, you can't see who was on the other side[.]" Dkt. No. 9-22 at 75-76, 97.

> your time." And then that's when I looked down and I seen him reach over here like this, get ready to cock – come back, and I said, "You don't want to do that." As soon as I said that, he got ready to turn around, so I hit the gas pedal and I ducked my head down. That's when the shooting concurred [sic.].

*Id.* at 79. Brown was grazed with a bullet on the back of his neck. *Id.* at 81.

Brown first went to the police station. *Id.* at 81-82. He identified "Theo" as the shooter and subsequently identified Latwon in a picture lineup that night. *Id.* at 135, 158-159. Shannon also testified it was Lawton who bumped into Roberts while Shannon, Roberts, Nash and Brown were chatting. Dkt. No. 9-23 at 17. Roberts did not know who bumped into him but described the person as a black man with a "big" nose and lips, approximately six-feet one or two-inches tall, weighing about two hundred thirty (230) pounds and wearing a hoodie-type pullover. *Id.* at 8-12. When Lawton was apprehended that evening, he was wearing a hooded sweatshirt. *Id.* at 137-139.

Furthermore, the jury was well informed regarding Brown's history as a confidential informant, that he had previously testified against Lawton in that capacity, and the two men were not on friendly terms. *See* Dkt. No. 9-22 at 87-90. The jury was informed Brown did not originally identify Lawton in his written statement. *Id.* at 100-101. The defense also exposed that Brown identified Lawton prior to participating in the photo lineup. *Id.* at 173-174.

Based upon the above-outlined evidence, the jury convicted Lawton of shooting with intent to kill. Dkt. No. 9-22 at 243-244. If the jury was now informed that Nash would positively testify it was *not* Lawton who shot at Brown, Nash would be impeached by his prior, inconsistent statements to authorities. Furthermore, even in the face of Nash's proposed new testimony, the jury would still be informed from Brown and Shannon that Lawton was the shooter. Therefore, the Court cannot conclude that "no reasonable juror would have found [Lawton] guilty beyond a reasonable doubt" in light of this new evidence. *House*, 547 U.S. at 537. For this additional reason, Lawton cannot avail himself of the actual innocence gateway.

## CONCLUSION

The Court finds and concludes Lawton's Petition for Writ of Habeas Corpus [Dkt. No. 2] is time-barred, and Lawton has not satisfied the requirements to pass through the actual innocence gateway. The Court therefore dismisses the Petition. The Court further concludes that no certificate of appealability shall issue because no reasonable jurists would debate the dismissal of the petition on statute-of-limitations grounds. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS THEREFORE ORDERED that the Motion to Dismiss [Dkt. No. 8] is GRANTED; the Petition [Dkt. No. 2] is DISMISSED with prejudice as barred by the one-year statute of limitations; a certificate of appealability is DENIED; and a separate judgment shall be entered in this matter.

IT IS FURTHER ORDERED that the Clerk of the Court shall note on the record the substitution of Kelli Davis, Warden, in place of Carrie Bridges as party Respondent.

Dated this 18th day of August 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE