**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

**THEODORIC B. LAWTON,**

**Petitioner,**

**v.**

**KELLI DAVIS, Warden,**

**Respondent.**

**Case No. 23-CV-272-JFH-JAR**

**OPINION AND ORDER**

This is a closed habeas action. In an Opinion and Order filed August 18, 2026, the Court dismissed with prejudice Petitioner Theodoric B. Lawton's ("Lawton") Petition for Writ of Habeas Corpus as barred by the one-year statute of limitations and denied a certificate of appealability. Dkt. No. 13. The Court entered judgment against Lawton the same day. Dkt. No. 14. This matter is before the Court on Lawton's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e). Dkt. No. 15. The Court construes the two-part Motion as: (1) a Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e); and (2) a Motion for Certificate of Appealability. For the reasons discussed below, each part of the Motion is denied.

## I. Applicable Legal Standard

Under Rule 59(e), a habeas petitioner may file a motion to alter or amend a judgment within 28 days following entry of the judgment. Fed. R. Civ. P. 59(e). This brief 28-day period for filing a Rule 59(e) motion "enables a party to request that a district court reconsider a just-issued judgment" and permits the "district court the chance to 'rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 590 U.S. 504, 507-08 (2020) (quoting *White v. N.H. Dep't. of Emp't Sec.*, 455 U.S. 445, 450 (1982)). When a petitioner files a timely Rule 59(e) motion, that filing "'suspends the finality of the original judgment" for purposes of

appeal." *Id.* at 508 (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 373 n.10 (1984)). Lawton's Motion was filed within twenty-eight (28) days of the entry of the judgment and is appropriately analyzed pursuant to Rule 59(e).

The bases for granting relief under Rule 59(e) are few. Generally, a district court may alter or amend a judgment only if there is: "(1) an intervening change in the controlling law; (2) new evidence previously unavailable; [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). A Rule 59(e) motion, however, is not an appropriate vehicle for rehashing previous arguments or advancing new ones that could have been presented in prior briefing. *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019); *see Banister*, 590 U.S. at 516 (noting that "a prisoner may invoke [Rule 59(e)] only to request reconsideration of matters properly encompassed in the challenged judgment" and that "[c]ourts will not entertain arguments that could have been but were not raised before the just-issued decision") (internal quotation marks and citation omitted)). Critically, Rule 59(e) motions "are regarded with disfavor and generally granted only if the court has obviously misapprehended a party's position or the facts." *Mellon v. Cessna Aircraft Co.*, 64 F. Supp. 2d 1061, 1063 (D. Kan. 1999).

Lawton contends this Court committed clear error in dismissing his Petition. *See* Dkt. No. 15. Specifically, Lawton contends the Court did not properly analyze the reliability of the Nash Affidavit, misconstrued the trial evidence regarding witness Jerome Shannon's testimony, and erred when conducting its alternative, actual innocence gateway inquiry. *See id.* The State filed a Response in opposition. Dkt. No. 16.

**II. Preliminary Matters**

First, the Court incorporates its August 18, 2026 Opinion and Order. Dkt. No. 13. The Court will not repeat the factual background and its prior analysis herein.

Second, as noted, a Rule 59(e) motion is not the appropriate vehicle to advance arguments that could have been presented in prior briefing. *Nelson*, 921 F.3d at 929. As mentioned in the Opinion and Order, Lawton did not address the timeliness of his third habeas petition anywhere in his initial filing. *See* Dkt. No. 2; *see also* Dkt. No. 13 at 4. This was *after* being on notice of a timeliness issue as it related to his 2022 habeas petition. *See* Dkt. No. 2 at 9 ("The district court granted the [2022] motion [to dismiss] on exhaustion grounds and did not address the government's timeliness argument."). Instead, within his prosecutorial misconduct claim, Lawton extensively briefed the actual innocence gateway and relied *only* on the Nash Affidavit. Dkt. No. 2 at 11-16. Later within his Petition when discussing his ineffective assistance of appellate counsel claim, in a confusing fashion, Lawton circled back to the *Schlup*[1] analysis as it related to Shirley Brown's Affidavit. *See* Dkt. No. 2 at 22-25.

If Lawton wished for the Court to consider the Shirley Brown Affidavit as new, reliable evidence in support of passing through the actual innocence gateway, Lawton should have presented this in his prior briefing in a coherent manner. *Rawle v. Wyo. Dep't of Corr. State Penitentiary Warden*, 390 F. App'x 769, 773 n.4 (10th Cir. 2010)[2] (Lawton is not entitled to liberal construction as he is represented by counsel); *Foster v. Smith*, 429 F. Supp. 3d 940, 961 (D.N.M. 2019) (even for a *pro se* petitioner, the Court is under no obligation to construct arguments for the habeas petitioner). After failing to mention the Shirley Brown Affidavit in the portion of his

---

[1] *Schlup v. Delo*, 513 U.S. 298 (1995).

[2] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Petition that embedded his actual innocence gateway claim within his prosecutorial misconduct claim, Lawton made only a passing reference to this affidavit in his Response. Dkt. No. 12 at 2. And, critically, Lawton did not even provide the Court with the Shirley Brown Affidavit; Respondent did. *See* Dkt. Nos. 2 and 12; *see also* Dkt. No. 9-11 at 28-29.

The Court concludes that any argument pertaining to the Shirley Brown Affidavit being new, reliable evidence which permitted Lawton to pass through the actual innocence gateway was an argument that could have been presented in prior briefing and was not. For this reason alone, Rule 59(e) relief, based upon the Court allegedly not appropriately considering the Shirley Brown Affidavit, is unwarranted.

In all, Lawton's chosen strategy of haphazardly briefing a foundational element of his habeas petition and now taking issue with the Court's thorough analysis is questionable.[3] Nevertheless, in an effort to "do justice" as required by Federal Rule of Civil Procedure 8(e), the Court will address each of Lawton's points, to the best the Court is able to discern them, and explain why Rule 59(e) relief is still unwarranted.

**III. The Nash Affidavit is Unreliable**

Within his affidavit, executed over seven (7) years after the crime and within two (2) months of him dying, Nash stated Lawton told him at the time of the shooting he did not know who shot him. Dkt. No. 9-11 at 23-24. Further, Nash allegedly told a prosecutor prior to Lawton's trial, "it was not Theo Lawton" who shot Brown. *Id.* Lawton claims the Court erred by assessing

[3] Many courts summarily deny counseled, inadequately briefed habeas claims. *See, e.g., DeLozier v. Sirmons*, 531 F.3d 1306, 1329 (10th Cir. 2008) (Denying habeas appellant's claim for ineffective assistance of counsel wherein "his brief does not identify specific improper questions asked … nor does it point to any specific improper comments[.]"); *Nevins v. Hill*, Case No. 07-747-AA, 2010 WL 1224237, at *1 n.1 (D. Ore. Mar. 22, 2010) (unpublished) (Denied petitioner's unbriefed claims); *Renderos v. Ryan,* 469 F.3d 788, 800 (9th Cir. 2006) (Counsel for petitioner waived claims in habeas petition where counsel did not set forth legal standards for such claims or attempt to meet them).

Nash's reliability in a "vacuum." Dkt. No. 15 at 6. Lawton hinges this argument on the Court's use of the words "standing alone" when addressing Nash's recantation. Dkt. No. 13 at 10. Lawton contends the Court should have considered the reliability of the Nash Affidavit in light of the "corroboration in Shirley Brown's affidavit concerning Brown's alleged admission, Robinson's timing testimony and the physical evidence" as alleged in the Petition. Dkt. No. 15 at 6 (citing Dkt. No. 2 at 22-25).

The Court incorporates its prior ruling that the Nash Affidavit is unreliable because it is a recantation of his prior statements[4] and does not explain his delay[5] in coming forth with the information. *See* Dkt. No. 13 at 9-11. Against this backdrop, the Court will first consider the Shirley Brown Affidavit as "corroboration" for the Nash Affidavit. Namely, the Nash Affidavit and the Shirley Brown Affidavit both claim Baeyan Brown ("Brown") did not know who shot him. *See* Dkt. No. 9-11 at 23 (Nash Affidavit) and Dkt. No. 9-11 at 28 (Shirley Brown Affidavit).

**A. The Shirley Brown Affidavit**

Shirley Brown stated in a handwritten February 28, 2011 affidavit that Brown came to her home on an unspecified day, was laughing about Lawton going to jail and told her he did not know who shot him. Dkt. No. 9-11 at 28. On April 25, 2011, Shirley Brown testified at the hearing on Lawton's motion for new trial which was premised upon Shirley Brown's Affidavit. Dkt. No. 9-24. Shirley Brown admitted: she had quit using crack-cocaine within the last two months [Dkt.

---

[4] "[R]ecanted testimony is notoriously unreliable, 'easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial.'" *Case v. Hatch*, 731 F.3d 1015, 1044 (10th Cir. 2013) (quoting *Carriger v. Stewart*, 132 F.3d 463, 48 (9th Cir. 1997) (Kosinski, J., dissenting)).

[5] "[T]he court may consider how the timing of the submission … bear[s] on the reliability of that evidence." *Schlup v. Delo*, 513 U.S. 298, 332 (1995). Nash offers no reason for his delay other than he is "tired of holding in the truth of knowing an innocent man is incarcerated for the rest of his life for something he did not do." Dkt. No. 9-11 at 23.

No. 9-24 at 10, 13]; is diagnosed with bipolar mood disorder [Dkt. No. 9-24 at 11]; could not definitively testify if Brown came by her house and made this confession prior to or after Lawton's trial [Dkt. No. 9-24 at 14-15]; did not know the day of the week or time of day Brown came to her house [Dkt. No. 9-24 at 16]; had only met Lawton five (5) or six (6) months ago, maybe a year ago [Dkt. No. 9-24 at 8]; was driven to Court to testify on April 25, 2011, by Lawton's sister [Dkt. No. 9-24 at 19]; and Shantell Robinson, Shirley Brown's cousin who testified on Lawton's behalf at trial, helped Shirley Brown pay her outstanding court fines on the morning of her testimony [Dkt. No. 9-24 at 18-19]. Shirley Brown's inability to provide any details regarding her conversation with Baeyan Brown along with the aid she to secure her testimony on April 25, 2011, renders her account highly suspicious. In all, the Court determines that Shirley Brown's affidavit is not reliable and does not offer corroboration to the Nash Affidavit. *Schlup*, 513 at 330 (newly presented evidence may require the Court "to make some credibility assessments").

**B. Robinson's Timing Testimony**

Next, the Court considers whether the "Robinson timing testimony" renders the Nash Affidavit reliable. Dkt. No. 15 at 6. At trial, Shantell Robinson ("Robinson") testified when she was leaving the Paradox club around 2:00 a.m. she heard a gunshot. Dkt. No. 9-22 at 187-189, 199. She began driving east on East Main Street and, within thirty (30) seconds of hearing the gunshot, observed Lawton walking near The Hut at the intersection of F Street and Burton Street. Dkt. No. 9-22 at 189-190.[6] Robinson testified Lawton asked, "who up there shooting?" and did not appear nervous. *Id.* at 191. On cross-examination, Robinson admitted it took her over ten (10) months to learn she possessed important information concerning the February 21, 2010 shooting.

[6] The corner of F Street and Burton is approximately one-tenth of a mile from the Paradox club, and it took Detective Culley "a hair over two minutes" to walk the distance. *See* Dkt. No. 9-22 at 170-171. Lawton contends this walk is a "3-minute walk." Dkt. No. 2 at 25.

*See* Dkt. No. 9-22 at 197-198. And prior to this February 21, 2010 shooting, Robinson had not spoken to Lawton since 1988 but on this evening decided to stop and talk with Lawton. *See id.* at 196. Robinson also testified she originally was unsure if she heard a gunshot or backfire. *Id.* at 207.

Based upon the weaknesses in Robinson's testimony exposed on cross-examination, the Court determines Robinson's credibility is questionable. *Schlup*, 513 at 330 (newly presented evidence may require the Court "to make some credibility assessments"). Therefore, the Court does not discern how Robinson's testimony tends to make Nash's Affidavit any more or less reliable.

**C. The Physical Evidence**

Finally, the Court considers the alleged physical evidence and whether that contributes to the reliability of Nash's Affidavit. The Court understands Lawton to be pointing to the time it takes to travel from the Paradox Club to F Street and Burton Street, where Robinson contends she observed Lawton shortly after the shooting. *See* Dkt. No. 2 at 25; *see also* Dkt. No. 9-22 at 189-190. Once again, these items all working together *might* support Lawton's defense that he did not shoot Brown. However, that is not the inquiry currently before the Court. The Court must determine if the new evidence is reliable enough to even be considered. *Blackstock v. Schnurr*, Case No. 24-3125, 2024 WL 4880569, at *5 (10th Cir. 2024) (unpublished). The time it takes to travel from the Paradox club to near The Hut does not undercut the many substantial reasons the Court concluded the Nash Affidavit is unreliable.

Therefore, after considering the Nash Affidavit and Lawton's newly articulated arguments as to why the Nash Affidavit is reliable, the Court, once again, concludes Lawton failed to demonstrate the Nash Affidavit is reliable. Nash's Affidavit fails to overcome the "extreme suspicion" with which the Court is to view the Nash Affidavit. *Case*, 731 F.3d at 1042. Nor does

Nash provide a reasonable explanation for his seven (7) year delay on the cusp of his death. *See Herrera v. Collins*, 506 U.S. 390, 417-18 (1993) (noting that "[t]he affidavits filed in this habeas proceeding were given over eight years after petitioner's trial" and that "[n]o satisfactory explanation has been given as to why the affiants waited until the 11th hour-and, indeed, until after the alleged perpetrator of the murders himself was dead-to make their statements"). And the witnesses relied upon to bolster the Nash Affidavit likewise suffer from credibility issues that were exposed on cross-examination. *Schlup*, 513 at 330 (newly presented evidence may require the Court "to make some credibility assessments"). For all of these reasons, the Court concludes the Nash Affidavit is unreliable and does not grant Lawton access to the actual innocence gateway. The Court discerns no "clear error" or "manifest injustice" which flows from the Court's original analysis of the Nash Affidavit. *See Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

**IV. The Court's Alternate Analysis**

Having addressed Lawton's complaints with the Court's analysis regarding the reliability of the Nash Affidavit, the Court turns to Lawton's next contention: the Court's *Schlup/ House*[7] inquiry was too narrow. *See* Dkt. No. 15 at 3-6. Critically, prior to any alleged errors identified by Lawton concerning the Court's actual innocence analysis, the Court concluded, "the Nash Affidavit does not satisfy the 'new reliable evidence' standard. *Fontenot* [*v. Crow*, 4 F.4th 982, 1031 (10th Cir. 2021).] For this reason alone, Lawton cannot pass through the actual innocence gateway." Dkt. No. 13 at 11. That is the Court's holding, and it remains unchanged by Lawton's argument presented in the Rule 59(e) Motion concerning the Court's analysis of the reliability of the Nash Affidavit. *See supra.*

---

[7] *House v. Bell*, 547 U.S. 518 (2006).

Lawton, instead, takes issue with the Court's subsequent, alternative analysis. *See* Dkt. No. 15.[8] Lawton argues the Court misstated the record when it stated, "the jury would still be informed from Brown and Shannon that Lawton was the shooter." Dkt. No. 13 at 12; Dkt. No. 15 at 2-3. Lawton also argues the Court erred in its actual innocence analysis because it allegedly failed to consider "all" of the evidence – namely the Shirley Brown Affidavit, Robinson's timing testimony and GSR evidence. Dkt. No. 15 at 5; see also Dkt. No. 13 at 11-12. However, Lawton fails to articulate how these alleged errors impacted the bottom line of the Court's decision or need to be corrected to prevent manifest injustice. *See* Dkt. No. 15. "[A] judgment will not be amended or altered if to do so would serve no useful purpose." *Jacobs v. Electronic Data Systems Corp.*, 240 F.R.D. 595, 599 (M.D. Ala. 2007) (citing 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1). "[E]ven if [Lawton's] contentions were correct, the Court's order and resulting judgment dismissing [the habeas petition] would be unchanged." *Crane Co. v. American Standard, Inc.*, 88 F.R.D. 199, 208 (S.D.N.Y. 1980) (denying Rule 59(e) motion and citing Wright & Miller). Therefore, on this basis alone, relief pursuant to Federal Rule of Civil Procedure 59(e) is not warranted.

**A. Shirley Brown Affidavit**

For the sake of completeness, the Court will briefly address Lawton's arguments that the Court erred when undertaking the *Schlup/House* analysis. Lawton contends Shirley Brown's Affidavit should have been considered as part of the alternative, actual innocence inquiry. *See* Dkt. No. 15 at 4-6. However, as explained above, the Shirley Brown Affidavit is not reliable. *See supra*. Shirley Brown could not provide any details supporting her assertion that Baeyan Brown came to her house and admitted he did not know who shot him. Dkt. No. 9-24 at 10-16. Also,

---

[8] "A district court is entitled to offer alternative grounds for its holding." *National American Ins. Co. v. American Re-Insurance Co.*, 358 F.3d 736, 739 (10th Cir. 2004).

Shirley Brown's credibility was significantly undermined at the hearing on Lawton's motion for new trial. *See* Dkt. No. 9-24. Shirley Brown admitted to being a recently reformed crack-cocaine user and diagnosed with bi-polar mood disorder. *Id.* at 10-11, 13. She was driven to the hearing by Lawton's sister and one of Lawton's witnesses, Robinson, used Shirley Brown's funds to pay Shirley Brown's outstanding court fees. *Id.* at 18-19. Therefore, for this additional reason, beyond the one originally articulated in the Court's Order [Dkt. No. 13 at 7 n.5], the Court did not err in failing to consider the Shirley Brown Affidavit in support of Lawton's quest to pass through the actual innocence gateway. *See Schlup*, 513 U.S. at 330 ("the habeas court may have to make some credibility assessments."); *Blackstock,* 2024 WL 4880569, at *5 ("*If the evidence is new and reliable*, then the habeas court should evaluate the petitioner's claim by considering all the evidence ….") (emphasis added).

**B. Gun Shot Residue**

Next, Lawton contends the Court failed to consider that "the GSR evidence was relevant to the overall evidentiary picture." Dkt. No. 15 at 5. Lawton does not articulate in the instant Motion what GSR evidence the Court failed to consider. *See* Dkt. No. 15. In his Petition, Lawton argued the prosecution engaged in misconduct because it did not request Lawton's clothing be tested for gunshot residue. Dkt. No. 2 at 26.

To the extent Lawton's position is that the absence of gunshot residue testing on his clothing entitles him to habeas review of his claims through the actual innocence gateway, this proposition fails. "To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Fontenot*, 4 F.4th at 1031 (emphasis added) (quoting *Schlup*, 513 U.S. at 324). Here, Lawton did not provide the Court with any exculpatory scientific evidence. For this reason, Lawton has failed to carry his burden and

consideration of Lawton's gunshot residue argument does not permit him to pass through the actual innocence gateway or entitle him to Rule 59(e) relief.

**C. Jerome Shannon Testimony**

Last, Lawton contends the Court mistakenly "treated Jerome Shannon as a witness who identified Lawton as the shooter even though the Court's own factual summary states only that Shannon identified Lawton as the person who bumped into Roy Roberts." Dkt. No. 15 at 1. Lawton contends this flawed characterization contributed to the Court's error in conducting the alternative analysis. *See id.* at 1-2.

Lawton asserts that the Court "accurately summarized the evidence" by stating that "Brown identified 'Theo' as the shooter, while 'Shannon also testified it was Lawton who bumped into Roberts.'" Dkt. No. 15 at 2 (quoting Dkt. No. 13 at 12). Lawton, however, takes issue with the Court's subsequent statement that, "even in the face of Nash's proposed new testimony, the jury would still be informed from Brown and Shannon that Lawton was the shooter." *Id.* at 12. Lawton suggests that this latter statement is a "factual characterization error" because it "converted a witness who placed [Lawton] near the scene into a second eyewitness identification of the shooter." Dkt. No. 15 at 3. The Court's latter statement, however, clearly was not a factual finding that Shannon was a witness who identified Petitioner as the shooter but, rather, a finding concerning what could be reasonably inferred from the evidence by a jury.

An Oklahoma jury is permitted to draw reasonable inferences from the evidence presented. *Baker v. St. Francis Hosp.*, 126 P.3d 602, 609 n. 6 (Okla. 2005). Therefore, even considering the Nash Affidavit, based upon the testimony presented to the jury that Brown identified Lawton as the shooter [Dkt. No. 9-22 at 135, 158-159], Shannon's testimony that it was Lawton who bumped into Roy Roberts ("Roberts") while Shannon, Roberts, Nash and Brown were chatting [Dkt. No. 9-23 at 17], Roberts' description of the person who bumped into him as wearing a hoodie-type

pullover [*Id.* at 8-12], Shannon's testimony that the shooting occurred "in a matter of seconds" of the altercation between Roberts and Lawton [*Id.* at 18-19] and Lawton being apprehended wearing a black hoodie[9] [Dkt. No. 9-22 at 137-138], the jury could draw the reasonable inference that it was Lawton who bumped into Roberts and ultimately shot Brown. *Fontenot*, 4 F.4th at 1032 ("the innocence inquiry requires a holistic judgment about all the evidence, and its likely effect on reasonable jurors[.]" (internal quotations omitted)). The Court discerns no error by its statement, "the jury would still be informed from Brown and Shannon that Lawton was the shooter." Dkt. No. 13 at 12. Therefore, the Court discerns no basis to grant Lawton relief pursuant to Rule 59(e).

In all, Lawton failed to demonstrate a "clear error" or "manifest injustice" resulting from the Court's original Opinion or that the Court "obviously misapprehended a party's position or the facts." *Brumark*, 57 F.3d at 948; *Mellon*, 64 F. Supp. 2d at 1063. Therefore, Rule 59(e) relief is not appropriate.

**V. Request for Certificate of Appealability**

Finally, Lawton requests the Court reconsider its denial of a certificate of appealability. Dkt. No. 15 at 8. A certificate of appealability may issue" to permit a state prisoner's appeal from a final adverse order in a habeas proceeding "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(A), (c)(2). To make this showing, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented

[9] Sergeant Keith Ingle, with the Ardmore Police Department, testified when he responded to a tip that someone had seen the shooter at the Karry Out Korner he encountered a female in a white Ford F-150 pickup with "a female front passenger and someone laid over in the back seat." Dkt. No. 9-22 at 136-137. When Ingle inquired of the driver who was in her vehicle, she responded, "my girl." *Id.* at 137. When he asked who else "she hesitated for a minute and advised 'Theo.'" *Id.* Ingle testified Lawton was in the backseat, "on the passenger side, but he was laid over towards the driver's side of the vehicle." *Id.* at 138.

were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* When the district court denies a habeas petition on procedural grounds a "COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [] jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Nothing in Lawton's instant Motion persuades the Court that it erred in denying a certificate of appealability. Therefore, the Court denies the motion for certificate of appealability. Lawton may, however, seek a certificate of appealability from the Tenth Circuit Court of Appeals. *See* Fed. R. App. P. 22(b)(1); 10th Cir. R. 22.1(a).

**CONCLUSION**

For all the reasons articulated herein, Lawton has not demonstrated this Court should grant relief under Rule 59(e). Thus, Lawton's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) [Dkt. No. 15] is denied. Further, because reasonable jurists would not debate the Court's resolution of Lawton's Rule 59(e) Motion, the Court denies a certificate of appealability as to any issues Lawton might raise on appeal related to this Motion and denies Lawton's renewed request for a certificate of appealability.

IT IS THEREFORE ORDERED that Lawton's Motion [Dkt. No. 15] is construed as a two-part Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) and a Motion for Certificate of Appealability.

IT IS FURTHER ORDERED that the Motion to Alter or Amend Judgment Pursuant to

Fed. R. Civ. P. 59(e) [Dkt. No. 15] is DENIED. A certificate of appealability is DENIED as to the Rule 59(e) request.

IT IS FURTHER ORDERED that the Motion for Certificate of Appealability [Dkt. No. 15] is DENIED.

Dated this 23rd day of October, 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE